UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11294-GAO

SCOTT SOMERS,
Plaintiff,

v.

MICHAEL ASTRUE,
Commissioner of the Social Security Administration,
Defendant.

OPINION AND ORDER
March 10, 2011

O'TOOLE, D.J.

Scott Somers seeks review of the decision by the Commissioner of the Social Security Administration ("Commissioner") finding that he was not disabled prior to April 26, 2006. Somers applied for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI") benefits on September 17, 2003, claiming that he became disabled as of May 15, 1996. (Administrative Tr. at 21 [hereinafter R.].) After his claim was denied both initially and on review, Somers filed a timely request for a hearing and a hearing was held before an administrative law judge ("ALJ") on November 16, 2006. (Id. at 753.) Somers, a medical expert ("ME"), and a vocational expert ("VE") testified at the hearing. (Id.) After the hearing, the ALJ issued a decision finding that as of April 26, 2006, Somers met the cardiac impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 and was thus disabled as of that date. (Id. at 23.) The issue on appeal is whether Somers was disabled prior to April 26, 2006, for SSI purposes, and prior to December 31, 1999, his date last insured, for SSDI purposes. The Appeals Council denied Somers' request for review and the ALJ's decision became the final decision of the

Commissioner. (Id. at 5.) Somers then appealed the final decision to this Court pursuant to 42 U.S.C. § 405(g).

Before the Court are cross-motions to reverse, and alternatively to affirm, the decision of the Commissioner. Concluding that there is substantial evidence in the administrative record to support the ALJ's decision and that no error of law was made, the Court now affirms the ALJ's decision.

**I.     The Claim and the ALJ's Decision**

Somers was born in 1959. (Id. at 84.) He earned a college degree in Electronic Music. (Id. at 767.) At the time of the ALJ hearing, Somers was living with his parents and had been divorced from his wife for approximately five years. (Id. at 760.) Although he had attained sole custody of his two children after the divorce, at the time of the ALJ hearing, they were both already in their twenties and living on their own. (Id.) Somers primary relevant work experience was as a sales representative. (Id. at 93.) He claims disability because of heart and kidney conditions. (Id. at 92.)

Somers was originally diagnosed with coronary artery disease ("CAD") in 1996, when it was determined he had single vessel disease. (Id. at 757.) Shortly after diagnosis, Dr. Jonathan Bier performed an angioplasty on Somers, implanting a stent in the tightest part of the right coronary lesion. (Id. at 663.) Dr. Bier conducted a follow-up in July of 1996 and noted that, aside from hypertension and shortness of breath experienced during an exercise test, Somers was doing well and further noted that he had lost forty pounds since the angioplasty. (Id. at 665, 666.)

In August 2003, Somers had a recurrence of symptoms. Somers had an abnormal EKG and tested positive for myocardial infarction. (Id. at 466.) Dr. Michael Meuth conducted another angioplasty on Somers, (id. at 461), placing a stent in Somers' right proximal artery, (id. at 471).

Somers was released from the hospital with final diagnoses of unstable angina, hypertension, gout, mild chronic renal failure, multiple kidney stones, hyperlipidemia, and anxiety with depression. (Id. at 460.) On July 19, 2004, Dr. Ravi Chander, a physician treating Somers for his CAD, noted that Somers was doing well cardiovascularly. (Id. at 619.) Similarly, on November 3, 2004, Dr. Chander noted Somers was doing reasonably well aside from occasional episodes of chest pain. (Id. at 621.)

In February 2005, Somers went to the hospital complaining of chest pain. (Id. at 487.) Cardiac catheterization revealed a constriction of the stent in the right coronary artery, (id.), as well as lesions to the mid-left anterior descending artery and the right proximal artery, (id. at 493). As a result of these findings, Somers underwent two-vessel stenting. (Id. at 757.) In March of 2005, Dr. Chander noted that since the stenting, Somers had done well without much complaining of chest pain, shortness of breath, palpitations, or lightheadedness. (Id. at 626.)

In April 2006, Somers once again went to the hospital complaining of chest pain. (Id. at 727.) On April 26, 2006, he was diagnosed with three vessel disease as cardiac catheterization revealed lesions in the distal right coronary artery, the right proximal artery, the ostial artery, the left anterior descending and circumflex arteries, and the mid-first obtuse marginal branch. (Id. at 727, 730.) Somers then underwent percutaneous vascularization of the left anterior descending and circumflex arteries and received three more stents. (Id. at 727.) Stents were not placed in Somers' second diagonal branch of the left anterior descending artery, his right coronary artery, or his right posterior descending artery. (Id. at 27.) As a result, Somers had narrowing of at least fifty percent in at least two nonbypassed coronary arteries, thereby meeting the cardiac impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id. at 26-27.)

Somers also suffers from nephrolithiasis (kidney stones). An IV pyelogram performed at Charlton Memorial Hospital in March 1992 revealed abnormal axes in both kidneys, forming a horseshoe shape, as well as a left sided stag horn calculus. (Id. at 495.) In May 1997, Somers was admitted to Charlton Memorial Hospital for renal stones and an IV pyelogram revealed stones in every portion of the left collecting system of his kidney. (Id. at 213.) Over a period of years, Somers underwent a number of procedures related to his kidney stones; he had such procedures in February, May, and December 1999, January and February 2000, May and July 2003, and January, August, September, October, and November 2004. (Id. at 129, 135, 138, 141, 143, 145, 148, 151, 203-04, 231-32, 256, 292, 295-96, 330-31, 401, 404, 441, 448, 548, 553, 556, 676-79, 697, 703, 706, 708, 713.) After each of these surgeries, which required Somers to be hospitalized for no more than a few days, Somers was discharged in stable condition with no restrictions. (Id. at 129-31, 135-36, 138-40, 141, 143-46, 148-49, 151, 203-04, 231-33, 256-57, 292-96, 330-34, 401-05, 441-42, 448-49, 548, 553-59, 676-79, 697-98, 703-04, 706, 708-09, 713-16.)

Several of Somers' treating physicians conducted physical capacity evaluations and residual functional capacity assessments on Somers. Their assessments varied. In November 2003, Dr. Stuart Gitlow conducted a consultative examination of Somers. (Id. at 172.) In that examination, Dr. Gitlow concluded that although Somers got fatigued easily, he could still carry out his activities of daily living. (Id. at 173.)

On May 2, 2005, Dr. M. A. Berard concluded that Somers could sit for four hours, stand for four hours, and walk for one hour in an eight-hour work day. (Id. at 550.) He further concluded that Somers could occasionally lift up to twenty pounds, occasionally carry up to ten pounds, and could occasionally bend and reach. (Id.) On July 28, 2005, Dr. Berard noted that Somers' impairments were likely to produce both good days and bad days and that he would

4

likely be absent from work for more than four days a month as a result of his impairments. (Id. at 552.) On April 6, 2006, Dr. Berard noted that Somers could sit for an hour at a time for a total of four to six hours, could stand for a half hour at a time for a total of one hour, and could walk for three minutes at a time up to a total of two to three hours in an eight-hour work day. (Id. at 662.)

Dr. Chander performed a residual functional capacity assessment on May 18, 2005. Dr. Chander concluded that Somers could sit for two hours and stand/walk for less than two hours in an eight-hour work day. (Id. at 615.) He also concluded that Somers could rarely lift and carry less than ten pounds and that he was incapable of holding even a low-stress job. (Id. at 614-15.)

Dr. Perkins performed a physical capacities evaluation on Somers on April 3, 2006. (Id. at 645.) Dr. Perkins concluded that Somers could sit up to an hour at a time up to a total of four hours, could stand for less than an hour at a time up to a total of one hour, and could not walk at all in an eight-hour work day. (Id.) He also concluded that Somers could not lift or carry even five pounds, repetitively push or pull with his arms, or squat, crawl, climb or reach. (Id.)

At the November 6, 2006 hearing before the ALJ, Somers testified that he could cook, do laundry, perform light cleaning around the house, and go grocery shopping. (Id. at 770, 772.) He also noted that he spent approximately one hour a day composing music. (Id. at 767.) He further testified that he had full custody of his two children after his divorce and, with the assistance of his parents, took care of them until they moved out on their own. (Id. at 764.) Somers noted that he spent his spare time watching television and using the computer, (id. at 768), and that because of exhaustion, he needed to nap up to four times a day for a period of between one to one and a half hours, (id. at 764).

At the same hearing, the ME testified that, based on his review of the record regarding Somers' recurrent coronary artery disease, Somers met the cardiac impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1 as of April 2006 but was not disabled prior to that date. (Id. at 758.) The VE testified that an individual of the claimant's age, education, and vocational background, who could not conduct repetitive bending, crawling, crouching, stooping, kneeling, or climbing, could not be exposed to unprotected heights or dangerous equipment, was limited to sedentary exertion levels, could only carry out simple one, two, three step tasks, and could not lift his arms above chest level—Somers' residual functional capacity as determined for the period prior to April 26, 2006—could not perform Somers' past relevant work. (Id. at 781.) However, such an individual could perform other jobs in the national economy. The VE specifically mentioned such an individual could work as an assembler, noting approximately 900 to 1,000 positions in Rhode Island and Southeastern Massachusetts and 87,000 positions in the United States, or as a general production laborer, noting 700 to 800 positions in Rhode Island and Southeastern Massachusetts and 54,000 positions in the United States. (Id.)

Applying the five-step sequential evaluation process set out in 20 C.F.R. § 416.920, the ALJ concluded that Somers was not disabled prior to April 26, 2006, but became disabled on that date and continued to be disabled throughout the date of her decision. (Id. at 27-28.)

## II. Standard of Review

The Social Security Act provides that factual findings of the Commissioner shall be conclusive if those findings are supported by "substantial evidence." 42 U.S.C. § 405(g). The First Circuit has held that the Commissioner's findings must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Further, the Commissioner's decision must be upheld even if the record arguably could justify a

different conclusion, so long as it is supported by substantial evidence. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). It is the Commissioner's responsibility to determine issues of credibility, draw permissible inferences from the evidence, and resolve conflicts in the evidence. Irlanda Ortiz, 955 F.2d at 769. The determination of the ultimate question of disability is also for the Commissioner, rather than the doctors or the courts. Rodriguez, 647 F.2d at 222 (citing Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975)).

## III. Legal Analysis

Somers argues that the ALJ erred in finding that he was not disabled prior to April 26, 2006. First, Somers claims that the incapacitation caused by his nephrolithiasis is ample evidence to support his claim that he was disabled prior to the date in question. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death *or which has lasted or can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Somers specifically points to the frequency of his surgeries, noting that he had seven in the span of one year, and asserts that the ALJ acknowledged Somers was incapacitated for two to three months on the occasion of each surgery. Somers further argues that these incapacitation periods were not included in the hypotheticals presented to the VE and that these lengthy absences would preclude Somers from all types of work.

A close reading of the record, however, shows that the ALJ did not, in fact, find that Somers was incapacitated for two to three months after each surgery; rather, the ALJ noted Somers was incapacitated for *no more* than two to three months on each occasion. (Id. at 24)

7

(emphasis added). On one occasion, Somers waited approximately three months to undergo urological surgery as his doctor foresaw complications with having the procedure done so quickly after an angioplasty. (Id. at 533.) However, there is no evidence that Somers was ever incapacitated for more than a few days on each occasion or that he was ever discharged with restrictions following such a surgery. (See, e.g., id. at 232-34.) The incapacitation periods that provide the backbone of Somers' arguments are not supported by the evidence and, even if they were, they still would not meet the Social Security Act definition of disability as they would not have lasted the requisite period.

Somers also argues that the ALJ failed to evaluate Somers' impairments in combination. While Somers is correct in noting that the ALJ must evaluate a claimant's impairments in combination, even if none of the impairments alone is sufficient to render the claimant disabled, see McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1126 (1st Cir. 1986), he does not point to any evidence showing that the ALJ failed to consider Somers' impairments in combination. Furthermore, the ALJ in her decision notes that "the claimant did not have an impairment or combination of impairments" that led to disability prior to April 26, 2006, thereby implying she did, in fact, consider the impairments in combination. (R. at 23.)

Moreover, the ALJ's determination that Somers was not disabled prior to April 26, 2006, is supported by substantial evidence. The evidence includes numerous treatment notes from Dr. Berard and Dr. Chander that Somers was doing reasonably well during the time period in question, as well as state agency medical consultant assessments at both the initial and reconsideration levels finding Somers capable of light work with occasional climbing. Although there are some physical capacity evaluations and residual functional capacity assessments which seem to clash with these treatment notes, it is the ALJ's responsibility at the hearing stage to

weigh and resolve conflicts in evidence, and it was rationally possible for the ALJ to think these assessments inconsistent with much of the evidence in the record. See Rodriguez, 647 F.2d at 222. In addition to the treatment notes, the VE found that an individual in Somers' condition prior to April 26, 2006 could perform work existing in significant numbers in the national economy. In her decision, the ALJ also noted that Somers did not receive regular treatment in between kidney stone flare ups—an indication Somers' pain was not continuous and, as a result, not disabling.

Based on all of the evidence, the ALJ could have reasonably concluded that Somers was not precluded from working and was not disabled prior to April 26, 2006. There was no error. Substantial evidence exists in the record to support the Commissioner's decision.

## IV.    Conclusion

For the foregoing reasons, the plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (dkt. no. 9) is DENIED, and the defendant's Motion for Order Affirming the Decision of the Commissioner (dkt. no. 12) is GRANTED. The decision is AFFIRMED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge